Good morning, Mr. Edwards's conviction involves an extension of rake that has long been assumed but as it turns out, under very recent precedent in the Supreme Court, it's neither necessary nor proper implementation of the policy. And this is a necessary and proper clause case. And the reason it's an extension of rake, and rake involved the interdiction of some marijuana locally grown, and it was also a 1983 action challenging the ability to regulate at all. But this case involves a deprivation of liberty totaling, in various kinds, about 13 years. And it occurs in a defendant-focused case, meaning that we're no longer just concerned with the interdiction of stuff and the regulation of stuff, but the discrete acts of discrete defendants. And so the first of the recent cases is Nat Feb, the Obamacare case, and I'll call it Nat Feb. And you have five votes in that case to look to the means at least. In other words, you don't look to globally whether Congress could just conclude that we can regulate intrastate activity and then do whatever we think we need to do. Well, let me ask you this. I mean, obviously, haven't we held that National Federation of Independent Business v. Sibelius did not affect our existing precedent rejecting Commerce Clause challenges to federal criminal law? If you look at U.S. v. Sullivan, that's a Ninth Circuit case rejecting Commerce Clause challenges to a conviction for intrastate possession of one video of child pornography. Yes, and that case also involves a statute that involves a jurisdictional element. And that case also arose on a denial, from a denial of a motion for judgment of acquittal, which means all you have to have is substantial evidence, and there was a use of computer. The second problem with Sullivan was that it was decided on the 28th of May, which means that there's another problem with Sullivan. It runs afoul of Bond because it's very hard to take Sullivan and avoid having a general police power because the idea is that these cases have said if you put it on a thumb drive made in China, that's enough. Well, that would allow you to prosecute a garden variety assault on the grounds that the claw hammer was manufactured in China, and Bond has not allowed you to go that far. Counsel, how does National Federation of Independent Business v. Sibelius help you? Well, it does because the very least that it does is that you have five justices, okay, Roberts less bluntly than the Scalia plurality, and that is a plurality on that point, say just because you have the right to regulate something does not mean that you can use whatever regulation you think best. In other words, it narrows, at least narrows, in Judge Scalia's words, stricter scrutiny of the outlier. It narrows the focus on the particular needs, and the problem with employing a criminal statute in this context this way is that somebody else has had the connection to interstate commerce, and we know from a variety of cases that that type of punishment by proxy poses a due process problem, and that's what's clearly irreconcilable because to continue to do this, to continue to make this assumption means you have to go back to a broad focus, a global focus, and that's a four-vote minority in NACFED. That's a four-vote minority. Right, but in that case, part of the rationale was that the people who were purportedly being regulated under the Commerce Clause weren't actually involved in commerce at that point. Well, that's true, but you have to, under a non-BAC opinion, you do more than just look to the holding. You look to the reasoning as well, and if the rationale of prior circuit law, okay, is inconsistent, clearly irreconcilable with the reasoning of NACFED, then you have to change, you have to limit, and this is a claim, not that you can't do this at all, but that you have to have some jurisdictional element to this that's either admitted in this case or ultimately proven biographies in the past, and as I said, the second issue that came, I believe June 2nd, but it was after Sullivan, and I think it's June 2nd, is that you cannot, however else you write your criminal statutes, you cannot create a general police power. You cannot write a criminal statute that gives a general police power, and applying the statute to Mr. Edwards does exactly that, and it also violates some other key structural provisions of the Constitution as well. It is Congress adjudicating jurisdictional facts, and since due process incorporates the common law, and if you go back and you dig your black stone out, you find out that a jurisdictional factual plea is heard by the jury, so that kicks into a lean, okay, because now you're increasing from no punishment at all to punishment, and again, you have to have a stricter standard, and it's clearly irreconcilable as a construction because 801 actually leaves that open. It says customarily, usually, but not always, so that's how bond helps as well. I mean, it's the combination of that, fed, and bond. It's a lot harder case if bond wasn't decided, or I'll put it this way. It's become easier since bond was decided. You also, what authority would allow us to hold that your client's appellate waiver was invalid? Well, there was a breach. There's, I mean, it's well settled in this circuit that there is a breach. When there is a breach, the appellate waiver is vitiated. Well, but your claim on the breach was that they agreed to argue for something if the level was 27 or above. Is that right? No. What is your breach? The 27 in that context is taken in the context as a whole. 27 comes from somewhere. It's just not, it's the result of the canonical guidelines, and paragraphs 14, 15, and 16 say, calculate this using the guidelines, using the applicable. Well, since you're running low on time, why don't you just tell me what the breach is? The breach is the failure to keep the promise as it should have been read in context. Okay, even though he ultimately was a 23 after all the. He had 23 because of changes in the law that the government didn't reserve against. Okay, they didn't put a provision in there that said, you know, we can actually rely on the law. I'm wondering whether in light of the, I guess the department, or the sentencing commission's memo of July 21, 2014, that whether we should, whatever else we do in this case, remand for resentencing effective, to be effective as of November 15. Well, the issue there, as you get there, you have to resolve the jurisdictional question. I mean, that may be actually an option if you get beyond the jurisdictional question. I don't think it's proper to get beyond the jurisdictional question. But assume you do get beyond it, then what? Well, then you would, that's an option to remand, and then there would be the litigation of how to deal with the salient, the most salient fact in the case, which is the degree to which his conduct affected interstate commerce. And that you would either provide guidance or not on that, depending on whether you felt that was necessary. Just so that I understand it, he started out with an exposure of over 20 years, right? And then his initial, the initial plea agreement was for no more than the 10. And then after the FSA came, then it went down to the 5-year mandatory. And then he got 98? 96. 96, okay. Yes, that's correct. Thank you. Thank you. Okay. I think you're over time already, but we'll give you a minute for rebuttal if you'd like. I would like that. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Allison Westfall-Kong for the United States. Turning first to the Commerce Clause argument, the arguments were closed by existing Ninth Circuit and Supreme Court precedent, most notably Gonzales v. Reich. I would disagree with the Defense Council's statement that it's just a necessary and proper clause decision. Indeed, the majority opinion in Reich doesn't rely on the necessary and proper clause, but simply, excuse me, concludes that based on Congress's determination that in the aggregate, such activity would substantially affect interstate commerce, it's a proper application of the Commerce Clause. And that was, you know, five justices on that. But we also have Justice Scalia's concurrence, which helpfully rebuts the suggestion that the NFIB decision has really changed anything. Because even if Justice Scalia believes that there is some kind of stricter scrutiny for necessary and proper cases, he found that it was necessary and proper to apply the Controlled Substances Act, even to people that were, you know, personally growing their own marijuana for medicinal use. Even the dissent in the Reich decision seems to suggest that defendant's conduct could constitutionally be covered by the CSA. Justice O'Connor notes that it's not clear that in Reich the respondents were actually engaging in any activity that had apparent commercial character. Noting that they didn't buy, sell, or barter, but here, as defendant admitted in his factual basis, he sold a thing of value, crack cocaine, in exchange for approximately $1,700. So under Wickard, under Reich, and even under NFIB, if Congress could rationally conclude that in the aggregate, these intrastate sales substantially affect interstate commerce. And those are findings that Congress has made that are referenced in the Reich decision. Can you respond to Counsel for the Appellant's argument regarding how Bond somehow assists his position? Well, respectfully, I just don't see how Bond really applies to this case. I mean, in Bond, you have kind of an application of kind of a military chemical weapons, something that seems to be directed at stopping chemical weapons kind of in conjunction with, you know, a military treaty, essentially. And it was being applied to somebody who was, you know, using chemicals kind of as a personal vendetta based on an affair. So I just don't see – certainly the facts of that case do not apply here. And I would still say that under Reich, the Supreme Court was by no means stating that the Controlled Substances Act gives a general police power. It's still very limited in that, you know, it has to be a commercial nature or economic nature, and Congress has to conclude that in the aggregate, that intrastate activity has a substantial effect on interstate commerce. So those limiting principles make it so even under Bond, the Controlled Substances Act is not creating a general police power. And throughout the Reich opinion, there's the suggestion that the CSA itself is kind of unquestionably constitutional. The only difficult issue is whether you can apply it to kind of this personal grow and personal use case. And again, here, it's not a personal use case. He's involved in a civil one. And I think I've already addressed why NFIB doesn't change this. I mean, all of the opinions in NFIB cite to Reich approvingly, including Chief Justice Roberts, who even goes so far to say that Congress's attempt to regulate the interstate market for marijuana would have been substantially undercut. And Chief Justice Roberts also refers to necessary and proper clause not as actually being necessary but as convenient, conducive, useful. So under his own kind of statement about Reich, Chief Justice Roberts appears to agree that applying the Controlled Substances Act in this case would be necessary and proper. So if Your Honors have no further questions on the Commerce Clause issue, I'll turn to the sentencing issues. It's the government's position that there was no breach, and so the appellate waiver should be applied. Courts enforce the plain language of the plea agreement so long as it's clear and unambiguous, and also apply the literal terms of the plea agreement. Well, I'm not quite sure that I exactly understand counsel's argument on the breach. But in the original agreement, it had to do with if it was a 27 or above, that you would argue for a certain reduction, right? We would argue for a sentence at the low end of the guidelines range, provided that the offense level is 27 or higher. That's correct. And so then when it went down to 23 because of several iterations that came about, you didn't argue for that at that point, right? We didn't make a low-end recommendation. We did agree that the offense level was 23, so perhaps that's what makes this a little bit unusual. But that provided that the offense level would be 27 or higher, which is included in there for a reason, to set a floor for what the government will have to recommend in sentencing. And since the court will apply, you know, the plain language and will apply terms literally, there wasn't a breach, so the additional arguments shouldn't be considered. And even if the court were to consider it, I think just looking at the sentencing court's resentencing transcript demonstrates that the district court duly considered all of the parties' arguments, went through all of the objections, and really spent a long time going through all of the 3553A factors and explaining why the district court believed they supported the 96-month sentence that was imposed. I believe that counsel for appellant at sentencing said something to the effect of, yeah, we would like to argue for less than five years, but we recognize you're bound by the five years minimum. Yes. I'm not exactly sure if that exact statement came out at sentencing, but I believe that the sentencing position that counsel filed argued for something more along the lines of 46 months or three years, or something more along the lines of what someone might expect for a California health and safety code violation, I believe was the issue. But he acknowledged at the sentencing hearing when asked by the district court that the district court could not go below the five years. Do you want to respond to Judge Wardlaw's comment about – I was going to ask you that, too. What's your office's position with respect to these cases that seem to fall within the July 21, 2014 sentencing commission memo? Would he be one of the ones who could be resentenced in accordance with this memo? I would like to just check in with our kind of appellate section and perhaps submit an additional letter. It's my understanding that at this point our office is taking the position that kind of all defendants that are sentenced going forward, the government will move for a two-level downward variance, provided that there isn't a career offender or other provision that applies, such that I believe what you're suggesting would be appropriate. But I would just like to confirm that. And, of course, we would want to wait to make sure that Congress doesn't act to change those guidelines. Well, I think what the recommendation is in the memo is that you conduct the resentencing, but you make it effective as of November 15, so that it's subject to whether or not Congress does anything. I see. Yeah, I think that's – have you read the memo, this July 21 memo? I have not read it. Okay, so you should read it. And it makes sense that if you already have a case that's in front of you, you can get it done instead of having to go through the process of moving to modify the sentence and bringing them back and all of that stuff. Yes, and I do know that for cases kind of being sentenced right now, we are taking the position that we'll agree to the two-level downward variance now in recognition that these amendments are, you know, very likely going to go through. So since you're not entirely sure what your position would be on this case, are you saying you would submit something to the Court telling us? Yes. Could I just submit a brief letter giving our position? Yes. You submit a letter within the next seven days. Certainly, Your Honors. Thank you. If you have no further questions, I'll just submit it. Thank you very much. Thank you. Thank you. Just very briefly, Your Honor, this is not an open market sale. It's a sale to a confidential informant. And so it's a possession for sale with a test that resulted in the exchange of drugs and money. And if what happened here in the form of the investigation is not a police power, then nothing is. And the federal criminal law can pretty much reach anything. Second of all, Mr. Dominarski construed the agreement without objection to say we don't need to change the agreement if there's a change in the law. In fact, the government's practical construction exhibits that. And again, you don't take it just literally isolated, but literally in context. And the last thing is that the district court says some of your arguments are for other courts to win this one or other courts. And so that was his view on the commerce clause, and I submit. Thank you. Thank you. Case just argued will be submitted. Next case for oral argument is Galba v. Holder.
judges: REINHARDT, WARDLAW, CALLAHAN